UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROLYN BETTON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:05-CV-1455 (JCH) |
| ) | |
| ST. LOUIS COUNTY, MISSOURI, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **MEMORANDUM AND ORDER**

The matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 23), filed December 13, 2006. The matter is fully briefed and ready for a decision.

## **BACKGROUND**

Plaintiffs are a group of five black women who now, and at all relevant times, were employed by St. Louis County in its Assessor's office[1] as "Office Specialist Representative(s)."[2] (Resp., Doc. No. 31 pg. 1). This job involves performing various clerical tasks at the Assessor's office. (Memo. in Supp., Doc. No. 24 at Muehlheausler's Aff. pg. 8). Until June 2004, each Plaintiff worked in the Appraisal Support section ("Appraisal Support"), which is responsible for inputting appraisals into the computer system. (Id. at pg. 22; Resp., Doc. No. 31 pg. 2).

---

[1]The Assessor's office is a part of the St. Louis County Department of Revenue. (Memo. in Supp., Doc. No. 24 at Muehlheausler Ex. ¶ 1-2).

[2]Prior to 2003, this job was titled "Office Specialist." (Def.'s Statement of Uncontroverted Facts, Doc. No. 24 ¶ 44).

In 2003-2004,[3] Plaintiffs observed behavior in Appraisal Support that they considered racially discriminatory because, unlike black employees, white employees were not observed as closely; were allowed to talk to each other; were allowed to use the phone; received better reviews; were allowed to use their computers for personal reasons; and were not reprimanded for sleeping at work. (Def.'s Statement of Uncontroverted Facts ("Def.'s Facts"), Doc. No. 24 ¶ 1, 4, 6-7, 9-17, 19, 21-23, 25, 27, 29, 31-33, 35-38, 41, citing Pls.' Deps.).

On June 16, 2004, Plaintiffs met with Phil Muehlheausler ("Muehlheausler"), the St. Louis County Tax Assessor, to discuss the alleged racial discrimination. (Resp., Doc. No. 30 at Ex. 2). Muehlheausler was allegedly dismissive of their complaints, and they decided to meet with the Director of Revenue, Robert Peterson ("Peterson"), on June 17, 2004. After hearing their complaints, Peterson told them that they would be transferred on a temporary basis to help other sections catch up on work. (Pls.' Statement of Facts ("Pls.' Facts"), Doc. No. 29 ¶ 49, citing Howard Dep. pg. 31). During this meeting, Peterson allegedly said that "everything would be alright" and that all employees of the Department of Revenue would be cross-trained to learn how the different sections work together. (Id. at ¶ 52, citing Johnson Dep. 46-47). Within one day of this meeting, Plaintiffs received either a new assignment or were moved to a different section.(Id. at ¶ 53). During March 2004 to September 2004, other employees at the Assessor's office were also transferred between sections.[4]

---

[3] Plaintiffs Cytoys Durham and Jurlean Johnson met with Muehlheausler in October 2002 to discuss their concerns about racial discrimination. (Def.'s Facts ¶ 46, citing Durham Dep pg. 23-25).

[4] Defendant submits a three page long list showing all of the section transfers from 2004 to present. (Def.'s Facts ¶ 61, citing Muehlheausler Aff. pg. 8-10). Notably, the percentage of white and black employees transferred between sections is roughly the same. (Id.). Plaintiffs allege that these transfers are irrelevant because they occurred at different times and did not last as long. (Pls.' Facts ¶ 61).

Plaintiffs assert that Defendant reassigned them because of the racial discrimination complaints. Plaintiffs do not dispute that the transfers did not result in a loss of benefits, salary, or a change in working hours. (Resp., Doc. No. 30 pg. 7). Defendant asserts that the reassignments occurred because other sections had a backlog of work while Appraisal Support had little work. (Muehlheausler Aff. ¶ 6). The Court will now detail each Plaintiff's transfer.

Carolyn Betton ("Betton") was transferred to the Abstract section ("Abstract") where her duties were to make copies of deeds, staple them, and put them in the proper folder. (Def.'s Facts ¶ 43, citing Betton Dep. pg. 23). Betton felt that she was hired to do data entry and that this task hindered her "potential for growth" because it involved very little data entry. (Betton Dep. pg. 67).

Cytoys Durham ("Durham") was not moved from Appraisal Support, but was reassigned to the front counter, where she assisted customers with the plat books. (Def.'s Facts ¶ 46; Pls.' Facts ¶ 45). Durham found the job tedious because she had to sit at the counter, did not have a personal computer, and had to pass the time by reading or doing crossword puzzles due to a lack of customers. (Pls.' Facts ¶ 45). Some employees, however, find this assignment desirable. (Reply, Doc. No. 32 at pg. 3).[5]

Colette Howard ("Howard') was transferred from Appraisal Support to the Personal Property[6] section ("Personal Property"), and then, three months later, to Abstract. (Def.'s Facts ¶ 50). Her duties in Abstract involved researching deeds and printing batches. (Id.). When transferred, Howard knew nothing about the Abstract job because all of her previous experience was in filing, customer service, and data entry. (Id.).

---

[5]Charlene King indicated in an interrogatory answer that she was unjustly prevented from working at the front desk. (Reply, Doc. No. 32 at King Interrogatory Ans.).

[6]Neither side has specified what Howard's duties were in Personal Property.

Jurlean Johnson ("Johnson") was transferred to Abstract, where she worked as a "runner," meaning that she ran errands for management and other employees. (Pls.' Facts ¶ 52). For example, Johnson would run between the third and fourth floor to make copies and pull deed copies. (Def.'s Facts ¶ 53). Johnson found the new job, to which she is still assigned, undesirable because she lost her cubicle, sat at a small desk surrounded by constantly used office equipment, and her coworkers asked her questions like, "What did you do" and "Were you a bad girl?". (Pls.' Facts ¶ 53, citing Johnson Aff. ¶ 7-9).

Charlene King ("King") was transferred initially to Personal Property and later to the Commercial Property section, Collections section ("Collections"), and Abstract. (Def.'s Facts ¶ 56). In Personal Property, her duties included answering phones, filing out forms, and processing mail. (Id.). While in Collections, her main duty was to stuff envelops. (Pls.' Facts, Doc. No. 29, citing King Aff. ¶ 6). She is now in Appraisal Support. (Def.'s Facts ¶ 56).

On September 9, 2005, Plaintiffs filed the present action claiming racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Compl., Doc. No. 1). Plaintiffs also brought claims of racial discrimination and retaliation under the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.055. (Id.). Defendants filed this Motion for Summary Judgment on December 13, 2006. (Doc. No. 23). On January 17, 2007, Plaintiffs voluntarily dismissed their claims of racial discrimination under Title VII and the MHRA. (Doc. No. 28).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law

determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## **DISCUSSION**

Title VII prohibits employers from discriminating against an employee who "has opposed any practice made an unlawful employment practice by this subchapter" or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Because Plaintiffs have no direct evidence of retaliation, their claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Twymon v. Wells Fargo & Co., 462 F.3d 925, 936 (8th Cir. 2006).[7]

---

[7]The Eighth Circuit instructs that MHRA claims are analyzed in the same manner as Title VII claims. See Stuart v. Gen. Motors Corp., 217 F.3d 621, 637 (8th Cir. 2000). Thus, the Court's Title VII analysis applies to the MHRA claims.

Under this framework, Plaintiffs have the initial burden of establishing a prima facie case of retaliation. Clark v. Johanns, 460 F.3d 1064, 1067 (8th Cir. 2006). Once Plaintiffs satisfy this burden, Defendant must offer a legitimate, non-discriminatory reason for the employment action. Quick v. Wal-Mart Stores, Inc., 441 F.3d 606, 610 (8th Cir. 2006). The burden of production then returns to Plaintiffs to show that the employer's reason was a pretext for discrimination. Id.

To establish a prima facie case of retaliation, Plaintiffs must present evidence that 1) they engaged in a protected activity; 2) an adverse employment action was taken against them; and 3) a causal connection exists between the two. Thompson v. Bi-State Dev. Agency, 463 F.3d 821, 826 (8th Cir. 2006). The threshold of proof to establish a prima facie case is "minimal." Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005)(citing Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1022 (8th Cir. 1998)). Here, Plaintiffs engaged in protected activity because they complained to their supervisors about behavior they believed was discriminatory. Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 914 (8th Cir. 2006) (holding complaining about discriminatory behavior in the workplace is protected activity); Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1118 (8th Cir. 2006).

To prove causation, a plaintiff must show that an employer's retaliatory motive played a part in the adverse employment action. Hughes v. Stottlemyre, 454 F.3d 791, 797 (8th Cir. 2006). Evidence that gives rise to an inference of retaliatory motive is sufficient to prove a causal connection. Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002). Evidence of temporal connection alone is usually not enough. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). The Court, however, believes that a time frame of one day is enough to make a prima facie showing of a causal connection. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam)(mere temporal proximity can establish causal connection); see Smith v. Allen Health Sys., Inc.

302 F.3d 827, 833 (8th Cir. 2002) (holding a two week interval between protected activity and adverse employment action was "sufficient, but barely so" to show a causal connection).

To make out a prima facie case, plaintiffs must also show that a materially adverse employment action occurred. The Supreme Court has recently clarified the meaning of adverse employment action. Burlington N. & Sante Fe Ry. Co. v. White, --- U.S. ---, 126 S. Ct. 2405, 165 L. Ed 2d 345 (2006). The Supreme Court adopted the Seventh Circuit and District of Columbia Circuit's standard that a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2415. (internal quotations and citations omitted). It also affirmed a jury's verdict that found reassignment of duties was an adverse employment action where the previous job had more prestige, was considered better, and was less arduous. Id. at 2416.

The standard adopted in White abrogates the "ultimate employment decision" standard previously employed by the Fifth and Eighth Circuits. See id. at 2410-11 (rejecting the Eighth Circuit's approach, as espoused in Manning v. Metro. Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997)). The Court cannot find any Eighth Circuit decisions applying the new standard; therefore, the Court will look to post-White precedent from other circuits to determine whether Plaintiffs suffered an adverse employment action.

The circuits agree that whether a transfer is a materially adverse employment action depends on the facts of the case. Some themes, however, do emerge from the caselaw. First, routine reassignments are not adverse employment actions. Roney v. Ill. Dep't of Transp., --- F.3d ----, No. 05-3382, 2007 WL 117501 at *3 (7th Cir. Jan. 18, 2007) (finding resident engineer's reassignment to inspect painting work was a routine practice and not an adverse employment action); McGowan v. City of Eufala, 472

F.3d 736, 742-43 (10th Cir. 2006) (finding transfer to day shift was not an adverse employment action); but cf. Mickelson v. New York Life Ins. Co., 460 F.3d 1304, 1316 (10th Cir. 2006)(denial of part time status is an adverse employment action). A loss of responsibilities or prestige can make a transfer an adverse employment action. White, 126 S. Ct. at 2416 (discussing loss of prestige); Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 209-10 (2d Cir. 2006) (holding that a transfer was materially adverse, despite no change in job title, because it caused the employee to lose most of his managerial assignments and job responsibilities); see also Velikonja v. Gonzales, 466 F.3d 122, 124 (D.C. Cir. 2006) (holding investigation of employee was an adverse employment action due to negative stigma it created). A transfer can also constitute an adverse employment action if it indirectly decreases pay or prevents promotion opportunities. Jordan v. City of Cleveland, 464 F.3d 584, 596 (6th Cir. 2006) (holding that transfer of black firefighter to prevent him from becoming acting officer constituted an adverse employment action); see Velikonja, 446 F.3d at 124 (preventing promotion during lengthy investigation constituted adverse employment action); Minor v. Centocor, Inc., 457 F.3d 632, 634 (7th Cir. 2006) (increasing amount of work without increasing pay could be an adverse employment action). With these standards in mind, the Court will examine each Plaintiff's reassignment.

**Carolyn Betton**

Betton was transferred to Abstract where her duties were to make copies of deeds, staple them, and put them into the proper folder. (Def.'s Statement of Facts, Doc. No. 24 ¶ 43, citing Betton Depo. pg. 23). The Court finds that this reassignment may dissuade a reasonable employee from complaining about discrimination. Although Betton still worked at the same location and received the same benefits, her new duties, viewed in the light most favorable to her, resulted in a loss of status and responsibility. See White, 126 S. Ct. at 2416; Kessler, 461 F.3d at 209-10.

**Cytoys Durham**

Durham was not moved from Appraisal Support, but was reassigned to the front counter, where she assisted customers with the plat books. (Def.'s Facts ¶ 46; Pls.' Facts ¶ 45). The Court finds that this reassignment a materially adverse employment action. Durham's new assignment had a lighter workload, which could dissuade a reasonable employee from complaining about discrimination for fear of further losses in responsibility, or even employment.[8]

**Colette Howard**

Howard was transferred from Appraisal Support to Personal Property, and then three months later to Abstract. (Def.'s Facts ¶ 50). The Court finds that a genuine issue of material fact exists regarding her transfer to Personal Property. Neither side has informed the Court about her working conditions in that section. Furthermore, the Court finds that the transfer Abstract could constitute a materially adverse employment action. A reasonable jury could conclude that her having to research deeds and print batches, something she had never done before, constitutes a demotion or removal of responsibilities.

**Jurlean Johnson**

Johnson was transferred to Abstract, where she was used as a "runner," meaning that she ran errands for management and other employees. (Pls.' Facts ¶ 52). The Court finds that Johnson suffered an adverse employment action. Johnson's reassignment strongly resembles a demotion. She was moved

---

[8]The Court does not believes that the lack of a personal computer contributed to making this assignment an adverse employment action. See Wenzel v. Mo.-Am. Water Co., 404 F.3d 1038, 1042 (8th Cir. 2005) (minor inconveniences do not amount to materially adverse employment action); Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1029 (8th Cir. 2004) (unhappiness with position does not create a materially adverse employment action).

to an undesirable desk next to the office equipment. Her coworkers looked down upon her new, and relatively marginal, responsibilities. See Kessler, 461 F.3d at 209-10.

**Charlene King**

King was transferred initially to Personal Property and later to Commercial Property, Collections, and Abstract. (Def.'s Facts ¶ 56). Upon consideration, the Court finds that these transfers did constitute an adverse employment action. Her duties included stuffing envelops, answering phones, and filing out forms. Stuffing envelops, like copying, is a duty that most employees with years of experience in data entry would find a humiliating demotion if it became their primary duty. See White, 126 S. Ct. at 2415-16; Kessler, 461 F.3d at 209-10.

Because each plaintiff has made out a prima facie case of retaliation, the Court must look to steps two and three of the McDonnell Douglas Analysis. Defendant has offered a non-retaliatory, legitimate reason, the lack of work in one section and a backlog of work in other sections, for moving Plaintiffs. Thus, the burden shifts back to Plaintiffs to show that this reason was a pretext for discrimination.

To show pretext, a plaintiff must both discredit the employer's asserted reason and show that the circumstances permit drawing the reasonable inference that the real reason for reassignment was based on race. Johnson v. AT & T Corp., 422 F.3d 756, 763 (8th Cir. 2005). Making a showing of pretext requires "more substantial evidence than it takes to make out a prima facie case, ... because, unlike evidence establishing a prima facie case, evidence of pretext ... and retaliation is viewed in light of the employer's justification." Id. (citations omitted). To carry this burden, the employee must show that the proffered reason was "unworthy of credence." Wallace v. Sparks Health Sys., 415 F.3d 853, 860 (8th Cir. 2005)(quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). An employee can demonstrate pretext by showing the employer meted out more lenient treatment to similarly situated employees who did not engage in the protected activity. Salitros v. Chrysler Corp.,

306 F.3d 562, 570 (8th Cir. 2002). Another method is to show that the employer's proffered reason has no basis in fact. Smith, 302 F.3d at 834-35.

Aside from strenuously asserting that the transfers' timing shows pretext, Plaintiffs allege the transfers were pretextual because Plaintiffs had never been reassigned before; they, but no other employees, had to relocate their physical work spaces; only two of them moved to Abstract; and Peterson made false comments to them. For the reasons stated below, the Court finds that these reasons fail to demonstrate pretext.

Although the transfers occurred shortly after the Peterson meeting, mere temporal connection is not enough to show pretext. See id. at 834. Plaintiffs argue pretext existed because none of the Plaintiffs was ever reassigned before. The Eighth Circuit instructs that the relevant inquiry is whether the employer honestly believed the legitimate reason given when the transfer occurred, not if the assertion or reason turned out to be true. Twymon, 462 F.3d at 935-36. Thus, Plaintiffs' lack of reassignments prior to 2004 is irrelevant for purposes of determining whether or not a backlog of work in other sections provoked these transfers. Furthermore, the reassignment of various other employees during 2004 and 2005 undermines any speculation that Plaintiffs were the only employees ever transferred or that the Assessor's office had no reason to transfer Plaintiffs. (Def.'s Facts, Doc. No. 24 ¶ 61, citing Muehlheausler Aff.).

Plaintiffs also argue that Defendant emphasizes the need for help in Abstract, yet only two of them were moved there. This argument does not discredit Defendant's asserted reason or show that it has no basis in fact. The transfer of two plaintiffs to Abstract shows a need existed in that department. The assignments to Personal Property do not discredit Defendant's stated reasons because other black and white employees were reassigned to Personal Property during March-August 2004, showing it needed more workers as well. (Def.'s Facts ¶ 61, citing Muehlheausler Aff. at Ex. 1). Plaintiffs also assert that

they were the only employees that had physically to move to a different department. Having to move one's desk to a different floor or part of the building does not discredit the employer's reason that help was needed in other sections.

Finally, Plaintiffs assert that Peterson's comment that all employees would be cross-trained is evidence of pretext. The Court disagrees. Plaintiffs have not shown that Peterson did not honestly believe that the Assessor's office should cross train all employees or that Peterson's[9] demeanor and behavior towards them changed after the complaint. Cf. Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1246 (8th Cir. 1998)(finding negative change in demeanor and behavior after complaint is evidence of pretext). Thus, Plaintiffs claims will be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 23) is **GRANTED** and Plaintiffs' claims are **DISMISSED** with prejudice. An appropriate judgment will accompany this Memorandum and Order

Dated this 5th day of February, 2007.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[9]Plaintiffs allege that Muehlheausler was indifferent towards their claims. While this may have been the case, it is not indicative of any retaliatory motive on his part. Furthermore, he did not make the decision to transfer Plaintiffs.