UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROLYN BETTON, et al., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:05CV01455 JCH |
| ) | |
| ST. LOUIS COUNTY, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Affidavit of Eric T. Tolen as to Attorneys' Fees and Expenses (Doc. No. 122), filed March 24, 2010, and Plaintiffs' Motion for Attorneys' Fees (Doc. No. 123), filed March 25, 2010. Tolen's and Plaintiffs' Motions for Attorneys' Fees have been fully briefed and are ready for disposition.

## LEGAL STANDARD

"Litigants may recover attorneys' fees if specifically authorized by contract or statute." Van Vosdingh v. Qwest Dex, Inc., No. 03-4284, 2005 U.S. Dist. LEXIS 20519, at *4 (D. Minn. Sept. 19, 2005) (internal citation omitted). The Missouri Human Rights Act ("MHRA") provides that a court "may award court costs and reasonable attorney fees to the prevailing party[.]" §213.111, R.S.Mo.

A district court has "broad discretion" in determining the amount of an attorneys' fee award. Keslar v. Bartu, 201 F.3d 1016, 1017 (8th Cir. 2000). The trial court is considered an expert in the reasonableness of attorneys' fees. Trim Fit, LLC v. Dickey, No. 4:06-CV-49, 2008 U.S. Dist. LEXIS 101091, at *19 (E.D. Mo. Nov. 6, 2008); American Bank of Princeton v. Stiles, 731 S.W.2d 332, 339 (Mo. Ct. App. 1987) ("reasonableness of attorneys' fees is a matter of law to be decided by the

court"). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). "Inadequate documentation may warrant a reduced fee." H.J., Inc. v. Flygt Corp., 925 F.2d 257, 260 (8th Cir. 1991) (citing Hensley, 461 U.S. at 437).

## DISCUSSION

**I.    ERIC TOLEN'S MOTION**

Eric Tolen represented Plaintiffs from 2005 until July 2007. Tolen admits that he does not have access to his file for this case, but "estimates" that he spent 475 hours providing representation for Plaintiffs. (Eric Tolen Affidavit ("Affidavit"), Doc. No. 122, ¶¶ 8, 12). Tolen claims that his hourly rate for this case was $350.00 per hour. (Affidavit, ¶ 9). Tolen seeks to recover $157,500.00. (Affidavit, ¶12(a))[1].

Tolen, however, has not provided any documentation to support these claims. Tolen has not provided an hourly breakdown for his "estimate" of 475 hours. Tolen's unverifiable assertions severely hamstring Defendant and preclude any true analysis of his claims. Although the Court recognizes that Tolen does not have access to the files necessary to support his fee request, Tolen's predicament should not prejudice Defendant. Without greater specificity, Tolen's "estimates" of his time records are insufficient evidence to support his attorneys' fees claim. Accordingly, Tolen's request for attorneys' fees is denied. See H.J., Inc., 925 F.2d at 260 (quoting Hensley, 461 U.S. at 437, n.12) ("Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for 'excessive, redundant, or otherwise unnecessary' hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim.").

---

[1]Tolen's Affidavit contains two paragraphs labeled as "12."

## II. PLAINTIFFS' COUNSEL'S MOTION

Initially, the Court notes that it will apply to the lodestar analysis to Plaintiffs' counsel's fee request. The lodestar analysis is determined "by multiplying the number of hours reasonably spent on the case by a reasonable hourly rate." Keslar v. Bartu, 201 F.3d 1016, 1017-18 (8th Cir. 2000) (citing Hensley, 461 U.S. at 433); Forshee v. Waterloo Indus., 178 F.3d 527, 532 (8th Cir. 1999). The district court may, in its discretion, exclude hours not reasonably spent on the case from the lodestar calculation. Keslar, 201 F.3d at 1018.

### A. Prevailing Party and Interrelatedness of Claims

"In evaluating the reasonableness of the attorneys' fees, the most important factor is the magnitude of Plaintiffs' success in the case as a whole." Vosdingh v. Qwest Dex, Inc., No. 03-4284, 2005 U.S. Dist. LEXIS 20519, at *7 (D. Minn. Sept. 19, 2005) (citing Hensley, 461 U.S. at 436). The "results obtained" factor is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." Hensley, 461 U.S. at 434. In this case, five Plaintiffs filed and argued Title VII and MHRA claims. During the jury instruction conference, Plaintiffs' counsel voluntarily dismissed Plaintiffs' Title VII claims. Thus, Plaintiffs did not prevail on these claims. Defendant argues that this Court should disallow 50% of the total attorney time. (Response, p. 4).

The Court must first determine whether Plaintiffs' claims were discrete. That is, if Plaintiffs' claims were "distinctly different" and "based on different facts and legal theories," then the court cannot award attorneys' fees for services on Plaintiffs' unsuccessful claims. Hensley, 461 U.S. at 434-35. But if Plaintiffs' claims involved a "common core of facts" or were "based on related legal theories," the Supreme Court has recognized that much of counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.

Id. at 435. "In such a case, the court cannot view plaintiffs' lawsuit as a series of discrete claims and should 'focus on the significance of the overall relief obtained by the plaintiff[s] in relation to the hours reasonably expended on the litigation.'" Albers v. Tri-State Implement, Inc., No. 06-4242, 2010 U.S. Dist. LEXIS 23450, *81-82 (D.S.D. Mar. 12, 2010)(quoting Hensley, 461 U.S. at 435).

Plaintiffs argue in response that the Title VII and MHRA claims were interrelated such that their attorneys' fees should not be reduced because they voluntarily dismissed the Title VII claims. Plaintiffs' counsel implicitly acknowledges that the amount of recovery involved was not significant, as is often the case with Missouri Human Rights Act claims. (Plaintiffs' Memorandum in Support of Motion for Attorneys' Fees ("Memorandum"), Doc. No. 124, pp. 7-8). Plaintiffs' counsel, however, urges the Court to find that the significance of their recovery is buttressed by their request for injunctive relief, which was denied by this Court. (Memorandum, p. 8).

Here, the Court finds that Plaintiffs' retaliation claims under Title VII and MHRA were based on a common core of facts because they arose from the same reassignments and evaluations. Plaintiffs alleged that they were reassigned after complaining about discrimination. Likewise, two Plaintiffs claimed that they received adverse evaluations after they complained about discrimination. While the Title VII and MHRA claims are distinct legal theories, both claims relate to the same basic facts and circumstances regarding Plaintiffs' employment with Defendant. Thus, the Court does not view Plaintiffs' lawsuit on these claims as presenting discrete legal issues that would warrant a 50% reduction in Plaintiffs' counsel's fee award simply because they dismissed their Title VII claims near the end of trial.

The Court then looks at "whether plaintiffs achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Albers, 2010 U.S. Dist. LEXIS 23450, at *83. If "a plaintiff has achieved only partial or limited success, the product of hours

reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith." <u>Hensley</u>, 461 U.S. at 436. In such a case, the Court can either identify specific hours that should be eliminated or it may reduce the award to account for the limited success. <u>Id.</u> at 436-37.

Here, the Court finds that a percentage reduction for Plaintiffs' limited success is appropriate. First, Plaintiffs dismissed their Title VII claims prior to closing arguments. Therefore, they were not successful on those claims. Second, Plaintiffs' counsel requested that the jury award Plaintiffs $645,000.00 in damages. Counsel requested $25,000 in compensatory damages for each Plaintiff in Count I, and $10,000 in compensatory damages for both Plaintiffs Johnson and King on Count II. Counsel also requested $100,000 in punitive damages for each Plaintiff. The jury only awarded Plaintiffs $30,006.00 in damages. On Count I, the jury awarded four of the Plaintiffs a dollar in nominal damages and $2,500 each in punitive damages. On Count II, the jury awarded Plaintiffs Johnson and King one dollar in nominal damages and $10,000 each in punitive damages. Finally, Plaintiffs were unsuccessful on their claims for injunctive relief. Defendant claims that the Court should discount its attorney fee award by 25% because of Plaintiffs' small recovery in comparison to the amount sought.

The Court will reduce Plaintiffs' counsel's requested attorneys' fee amount by 25% because of their limited success on this case.[2] <u>Tyler v. Corner Constr. Corp., Inc.</u>, 167 F.3d 1202, 1204 (8th Cir. 1999)(internal citation omitted)("The proper amount of attorney's fees depends in part on the extent of the plaintiff's success; where the plaintiff obtains only 'limited' relief, the court may award

---

[2]Plaintiffs have not reduced their hours despite their dismissal of their Title VII claims or because of their limited success on the MHRA claims.

only limited fees."). The Court cannot identify specific hours spent on Plaintiffs' Title VII claim or Cytoys Durham's claim by looking at the hourly statement submitted by Plaintiffs. Consequently, the Court will reduce the lodestar by a percentage to account for Plaintiffs' limited success. Albers, 2010 U.S. Dist. LEXIS 23450, at *84-85; see Burks, 215 F.3d at 883 (an attorneys' fee award of 25% of that which was requested was reasonable given the "relative interrelatedness of the various claims, the lack of specificity in the billing statements, and the degree of success achieved on the claims on which [plaintiffs] prevailed"); Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 905 (9th Cir. 1995 ) ("a district court does not abuse its discretion when it resorts to a mathematical formula, even a crude one, to reduce the fee award to account for limited success").

      B.      Evaluation of Plaintiffs' Counsel

           1.      Hourly Rate

The lodestar approach for an attorneys' fee award utilizes a "reasonable hourly rate" multiplied by the number of hours reasonably spent on the litigation. Hensley, 461 U.S. at 434. Plaintiffs' counsel asserts that they normally charge the following rates:

    D. Eric Sowers- $450.00/hour

    Ferne P. Wolf-$400.00/hour

    M. Beth Fetterman-$250.00/hour

    Rufus Tate, Jr.-$300.00/hour

Plaintiffs' counsel has provided affidavits from attorneys in the area that attest that the rates charged by Ms. Wolf and Mr. Sowers are appropriate for the type of work and given their levels of experience. (Memorandum, p. 2). No such affidavits were provided in support of Ms. Fetterman's or Mr. Tate's rates. Plaintiffs assert that Defendant has offered no evidence to dispute counsels'

rates, particularly no evidence regarding similar rates charged in St. Louis. (Plaintiffs' Reply to Defendant's Opposition to Motion for Attorneys' Fees ("Reply"), Doc. No. 149, p. 1).

Defendant argues that Plaintiffs' counsel's purported hourly rates are excessive. Defendant bases this claim upon the annual survey performed by Altman Weil of New York. Based upon this survey, Defendant claims that the appropriate rates for Plaintiffs' counsel are as follows:

D. Eric Sowers-$375.00/hour

Ferne P. Wolf-$375/hour

M. Beth Fetterman-$195/hour

Rufus J. Tate, Jr.-$260/hour

The Court finds that the affidavits from attorneys in the St. Louis area on behalf of Mr. Sowers and Ms. Wolf are sufficient to demonstrate that they are entitled to their requested rates ($450/hour and $400/hour, respectively). Given that no affidavits were provided in support of Ms. Fetterman[3] and Mr. Tate, the Court will apply the rates suggested by Defendant according to the Altman Weil survey ($195/hour and $260/hour, respectively).[4]

      2.    Plaintiffs' Counsel's Representation

In support of their claim for attorneys' fees, Plaintiffs' counsel describes the quality and ability of their representation and how such representation culminated in a successful Plaintiffs' verdict on the MHRA claims. Plaintiffs' counsel notes that they accepted representation of Plaintiffs after the Eighth Circuit reversed the district court's grant of summary judgment. (Memorandum, p. 3). Due

---

[3] David C. Howard's affidavit mentions Ms. Fetterman in passing but does not comment on her level of expertise or the reasonableness of her rate. (Doc. No. 124-6, ¶ 8).

[4] The Weil Survey has been utilized approvingly by several courts. Goldberger v. Integrated Res., 209 F.3d 43, 56 (2d Cir. 2000); Coppedge v. Franklin County Bd. of Educ., 345 F. Supp. 2d 567, 577 (E.D.N.C. 2004) (reducing an associate's billing rate pursuant to the Altman Weil 2003 Survey of Law Firm Economics);

to the dearth of discovery up to that point, Plaintiffs' counsel had to engage in significant discovery and verify the completeness of their files. (Memorandum, pp. 3-4). Plaintiffs also challenged Phil Muehlheausler's claim that he did not recall meeting with the Plaintiffs regarding their complaints. (Memorandum, p. 4).[5] Plaintiffs' counsel notes their significant legal experience, which allowed them to address defense counsel's arguments "on the spot." (Memorandum, pp. 4-5). Plaintiffs' counsel claims that they had to expend considerable time preparing for the testimony of Mr. Muehlheausler, whom Defendant previously claimed would be unavailable for trial. (Memorandum, pp. 5-6). These claims do not appear to be in dispute.

C. Defendant's Counsel's Representation

In support of their claim for attorneys' fees, Plaintiffs' counsel asserts that their hours were justified given the vigor of their opposition. Plaintiffs' counsel claims that the time they expended on representation in this case was reasonable given the capable representation by Defendant's counsel. Plaintiffs' counsel complains that, when Defendant agreed to make its file available for copying, Defendant provided "three boxes containing raw documents" to Plaintiffs' office for copying.[6] (Memorandum, pp. 8-9). Plaintiffs' counsel claim that their representation was made more difficult

---

[5]Plaintiffs repeatedly suggest in their Motion, as they did throughout trial, that Mr. Muehlheausler's lack of recall regarding his meeting with Plaintiffs on June 16, 2004 was "feigned." (Memorandum, pp. 4, 7). Based upon the testimony at trial, however, the Court is not convinced that Mr. Muehlheausler's inability to remember a single meeting was deceitful. While the Court agrees that additional discovery was required due to Mr. Muehlheausler's lack of memory, the Court is unwilling to attribute that to Defendant's alleged ill motive.

[6]Plaintiffs' counsel appears to complain that defense counsel required Plaintiffs to pay for copying Defendant's files. Plaintiffs' counsel's complaint is baseless given that these documents had been provided previously to Plaintiffs' former counsel and because the federal rules require only that the producing party make the documents available for inspection and copying. See Fed.R.Civ.P. 34(a). The Court notes that Plaintiffs' counsel may have spent additional time returning some inadvertently disclosed attorney-client communications, but the Court doubts this made the copying project particularly "arduous." (Memorandum, pp. 8-9).

because Mr. Muehlheausler refused to admit that his June 16, 2004 meeting with Plaintiffs occurred and that Mr. Muehlheausler made false statements regarding the supervisor comments on Johnson and Betton's evaluations. (Memorandum, p. 9). Plaintiffs assert that Defendant claimed that Muehlheausler was unavailable for trial but, at the last minute made him available to testify before the jury. (Memorandum, pp. 10-11). Plaintiffs' counsel also complains that the documents produced for trial were "disorganized," that Defendant named additional trial witnesses a couple of months before trial, and that Defendant refused to stipulate that Plaintiffs satisfied all of the administrative prerequisites to file suit. (Memorandum, p. 11). Plaintiffs also noted that defense counsel argued various points of law and submitted several jury instructions. (Memorandum, pp. 12-13).

    D.    Number of Hours

Defendant complains that the attorneys in this case frequently performed duplicate tasks which resulted in excessive billing. (Response, pp. 7-13). See Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 772-74 (8th Cir. 2000) (fees will not be awarded for unnecessary or excessive hours billed by plaintiff's counsel). The Court finds much of Defendant's argument to be well-taken.

        1.    Billing prior to an executed fee agreement

Plaintiffs claim that there is no requirement that a fee agreement be in place for counsel to be compensated for work performed. (Reply, p. 5). The Court, however, finds that it would be unreasonable to compensate Plaintiffs' counsel for fees incurred prior to counsel agreeing to accept the litigation. These fees were incurred while the attorneys were investigating Plaintiffs' claims and determining whether to represent Plaintiffs. Thus, the Court declines to award fees for when counsel was not actually representing Plaintiffs. See Ross v. Douglas County, 244 F.3d 620, 622 (8th Cir. 2001) (internal citation omitted) ("The Supreme Court has cautioned the federal judiciary that contingent fee contracts in civil rights cases should be monitored so that the attorneys are

- 9 -

compensated only for the reasonable expenditure of hours on a given case. ... This admonition is said to provide safeguards to protect against a windfall to civil rights attorneys."). The Court disallows time prior to the execution of the fee agreement with Plaintiffs. The Court disallows 11.5 hours of time for Rufus Tate (3/13/09, 3/14/09, 3/16/09) and 2.0 hours for Ferne Wolf (3/17/09, 3/18/09).

2. Duplicate billing

"A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." A.J. ex rel. L.B. v. Kierst, 56 F.3d 849, 864 (8th Cir. 1995) (citing Johnson v. University College, 706 F.2d 1205, 1208 (11th Cir.), cert. denied, 464 U.S. 994, 78 L. Ed. 2d 684, 104 S. Ct. 489 (1983). The Court finds that Plaintiffs' counsel, which included four separate attorneys, requested a significant amount of time for duplicate work. For example, four attorneys billed for trial time even though Mr. Sowers and Ms. Wolf were the only counsel that addressed the Court. Accordingly, the Court will only allow time for Mr. Sowers and Ms. Wolf during trial. Van Cleve v. Soc'y of St. Vincent De Paul, No. C03-1019, 2005 U.S. Dist. LEXIS 17314, at *12 (N.D. Iowa Apr. 4, 2005) (declining to award fees for two attorneys to attend depositions).[7]

Plaintiffs assert that the time spent by Ms. Fetterman and Mr. Tate was essential to their case, and Plaintiffs are entitled to full compensation for Ms. Fetterman's and Mr. Tate's hours. Ms. Fetterman attended trial during the lunch breaks to explain the trial and answer questions from Plaintiffs. (Reply, pp. 5-6; Doc. No. 149-3, ¶7). Mr. Tate claims that he was performed "real time" legal research, consulted with Plaintiffs, made copies and conferred with defense counsel. (Doc. No. 149-4, ¶3). The Court finds that Plaintiffs' counsel's use of Ms. Fetterman and Mr. Tate constituted

---

[7] The Court allowed some conferences but reduced those numbers when it felt counsel's billing was excessive. See Albers, 2010 U.S. Dist. LEXIS 23450, at *75 ("the time spent in conferences, discussions, and email correspondence among attorneys and paralegals was reasonable").

a discretionary staffing decision and was not essential for trial. With the exception of the afternoon when Mr. Sowers left for a family emergency, Mr. Sowers and Ms. Wolf fully and capably represented Plaintiffs.[8] Mr. Tate claims that his "function was critical to enable plaintiffs to adequately respond to any legal arguments made by defendant." (Doc. No. 149-4, ¶3).[9] The Court notes, however, that Mr. Tate was not present for part of trial due to an oral argument in another court and that he, at times, sat in the courtroom gallery during testimony. Thus, it does not appear that Mr. Tate's presence was essential to the success of the litigation. Further, Plaintiffs have not explained why both Mr. Tate and Ms. Fetterman were necessary to discuss the case with Plaintiffs. In that respect, Mr. Tate and Ms. Fetterman's roles seem duplicative of each other, if not also of Mr. Sowers and Ms. Wolf.

Plaintiffs also claimed that they should be entitled to bill for four attorneys because Defendant had between three and four attorneys present during trial. (Reply, p. 5). Plaintiffs' argument is a red herring. Defendant, obviously, has not asked for reimbursement for all of its attorneys. Moreover, if the roles were reversed, the Court would expect Plaintiffs to object to an attorneys' fee award for all four of Defendant's counsel, which would be well taken.

The Court finds the following entries to be duplicative:

---

[8] The Court notes that Mr. Sowers left to attend to a family emergency on the afternoon of March 5, 2010, and Mr. Tate filled in for Mr. Sowers at that time. The Court will award Plaintiffs fees for Mr. Tate for that afternoon but, otherwise, holds that Mr. Tate's presence at trial was duplicative and non-compensable.

[9] Although not entirely contradictory, Plaintiffs' counsel noted in their Memorandum in Support that Plaintiffs' counsel "had to be current in the law to bring the updated caselaw to the court's attention....Plaintiffs' counsel had to address these new arguments on the spot; if Petitioners had to research the law for authority, they would not have been able to respond to defendant's proposed instructions." (Memorandum, pp. 4-5).

0.2 hours--Tate debriefing by Sowers regarding deposition (10/12/09)[10]

3.75hours--Fetterman attendance at trial (3/1/10)

8.0 hours--Tate attendance at trial and preparation for day two (3/1/10)

2.5 hours--Fetterman attendance at trial (3/2/10)

4.0 hours--Tate  attendance at trial and preparation for day three (3/2/10)

2.5 hours--Fetterman attendance at trial (3/3/10)

6.0 hours--Tate  attendance at trial and preparation for day four (3/3/10)

3.5 hours--Fetterman attendance at trial (3/4/10)

6.0 hours--Tate attendance at trial and preparation for day five (3/4/10)

4.0 hours--Tate attendance at jury instruction conference and preparation for day six (3/5/10)[11]

3.5 hours--Fetterman attendance at trial (3/8/10)

7.0 hours--Tate attendance at trial, preparation for day seven and discuss closing themes with Sowers and Wolf (3/8/10)

7.0 hours--Tate attendance at closing arguments and jury deliberations (3/9/10)

       3.     Clerical Work

"Compensation for ... clerical tasks is not appropriate." <u>Sellers v. Peters</u>, 624 F. Supp. 2d 1064, 1069 (E.D. Mo. 2008).   Plaintiffs are "not entitled to attorney's fees for time expended for work that should be considered clerical in nature." <u>Neely v. Astrue</u>, No. 1:08-cv-01090, 2010 U.S. Dist. LEXIS 38323, at *6 (W.D. Ark. Mar. 23, 2010); <u>see also</u> <u>Granville House, Inc. v. HEW</u>, No.

---

[10]The Court reduced Plaintiffs' counsel's billing from 0.5 to 0.3 because Defendant challenged this as a duplicate bill but Plaintiffs did not address this in their Reply.

[11]The Court awards attorneys' fees Mr. Tate's attendance at trial on the afternoon of March 5, 2010, when Mr. Sowers left early for a family emergency and Mr. Tate assisted Ms. Wolf. (Doc. No. 149-1, ¶12).

85-5395, 1987 U.S. App. LEXIS 18348, at *8 (8th Cir. Mar. 6, 1987)(plaintiff's attorney was not entitled to compensation for work which "could have been done by support staff"); Van Cleve v. Soc'y of St. Vincent De Paul, No. C03-1019, 2005 U.S. Dist. LEXIS 17314, at *11-12 (N.D. Iowa Apr. 4, 2005) (examples of non-compensable, clerical tasks include scheduling depositions, securing court reporters, calendaring deadlines, and ordering transcripts)

Defendant lists several items that the Court agrees should be excluded as clerical tasks. The Court will exclude the following:

0.2 hours--Tate reviewed amended case management order and calendared events (5/1/09)

0.2 hours--Sowers attempted to call defense counsel and left a message (7/1/09)[12]

0.2 hours--Sowers printed, signed, mailed and e-mailed a document (7/4/09)[13]

0.2 hours--Sowers checked the USA&M website for a form and printed it (7/4/09)[14]

0.2 hours--Wolf reviewed and "calendared" an order regarding a telephone conference with the Court (8/31/09)

0.6 hours--Sowers made an "arrangement with clients for efficient mechanism to transmit information between the attorneys and the clients" (10/2/09)

0.5 hours--Fetterman prepared notices, mailed and contacted a court reporter (10/5/09)[15]

---

[12]In his affidavit, Mr. Sowers expounds regarding why it took him nearly twenty minutes to leave a voicemail for Mr. Shuman. (Doc. No. 149-1, ¶3). Even given the step-by-step analysis of his telephone message procedure, the Court finds that a reasonable attorneys' fee would be 0.1 hour and deducts 0.2 hours from the requested award.

[13]Mr. Sowers admits that a reasonable deduction for the clerical portion of the requested amount would be 0.2 hours. (Doc. No. 149-1, ¶4).

[14]The Court awards Plaintiffs' counsel 0.2 hours for the time it took Mr. Sowers to complete the USA&M form, and denies Plaintiffs' counsel 0.2 hours for the clerical work associated with this task. (Doc. No. 149-1, ¶5).

[15]On October 5, 2009 and December 23, 2009, Ms. Fetterman asserts that she chose to coordinate several depositions and prepare the notices because it was more efficient than delegating

0.5 hours--Fetterman clerical work (12/23/09)

0.25 hours--Fetterman e-mailed a court reporter regarding the location of a deposition (1/14/10)[16]

1.0 hour--Fetterman prepared and copied exhibits for trial (2/8/10)[17]

0.2 hours--Wolf filed pretrial materials (2/19/10)

0.2 hours--Wolf e-mailed instructions in WordPerfect to B. Goff (2/22/10)[18]

        4.     Travel Time

Defendant asks the Court to reduce Plaintiffs' attorneys' fee award for Mr. Sowers's travel time. Mr. Sowers requested travel time from his office to the location of in-town depositions, mediation and this courthouse. Mr. Sowers's time records do not indicate that any of the locations were out of town or otherwise different from a typical commute. The Court does not believe that Mr. Sowers should be compensated for travel time to depositions and mediation because it does not appear to be different than the normal travel time for his law practice.[19] The Court approximates Mr.

---

these tasks. (Doc. No. 149-3, ¶3). The Court deducts 0.5 hours on each date for the time spent performing the clerical tasks associated with coordinating these depositions.

[16] The Court finds resetting the deposition location with a court reporter to be a clerical task. (Doc. No. 149-3, ¶5).

[17] The Court awards Mr. Sowers the full 4.15 hours that he spent marking and copying exhibits on February 4, 2010. (Doc. No. 149-1, ¶11). The Court deducts an hour for the time Ms. Fetterman spent on clerical activities such as copying and labeling. (Doc. No. 149-3, ¶6).

[18] Although Ms. Wolf explains, in great detail, the process of e-mailing Ms. Goff, the Court finds that e-mailing Plaintiffs' proposed jury instructions and verdict directors was a simple clerical task that could have been performed by support staff. (Doc. No. 149-2, ¶7).

[19] In Mr. Sowers's affidavit in support of the Reply, he claims that during his travel to depositions he would "mentally prepare" by reviewing his questions for the witness and, during his travel from the depositions, he would review the deponent's answers for consistency and for follow-up issues. (Doc. No. 149-1, ¶¶7, 9). The Court finds that Mr. Sowers was billing primarily for his travel to depositions and mediation and any mental preparation was secondary and is not compensable. Mr. Sowers also claims that, with the exception of one day, Ms. Wolf drove Mr. Sowers to the Courthouse and Mr. Sowers prepared for trial during that time. The Court will award Mr. Sowers his full time for the trial days because it appears that he was not billing for travel, but for

Sowers's travel time to be 0.5 hours for each day for depositions. Accordingly, the Court reduces Mr. Sowers's fee award by 2.5 hours for each of the depositions.[20] See Warnock v. Archer, 397 F.3d 1024, 1028 (8th Cir. 2005)(deducting 2.5 hours of attorney's travel time); United States v. Petters, No. 08-5348, 2009 U.S. Dist. LEXIS 95754, at *8 (D. Minn. Oct. 14, 2009) (citing McDonald v. Armontrout, 860 F.2d 1456, 1463 (8th Cir. 1988) ("A District Court may, in its discretion, reduce fees for travel time if such a reduction is reasonable under the particular facts of the case."); United States ex rel. Thompson v. Walgreen Co., 621 F. Supp. 2d 710, 729 (D. Minn. 2009)(reducing attorney fee compensation where travel was less than ten miles); but see Rose Confections, Inc. v. Ambrosia Chocolate Co., 816 F.2d 381, 396 (8th Cir. 1987) (recovery of full hourly rate for attorney travel time is permitted unless district court determines in its discretion that such recovery would be unreasonable).

## IV.   CONCLUSION

The Court deducts the clerical, duplicate and excessive hours as indicated above. The Court also reduces the rates for Mr. Tate and Ms. Fetterman. The Court awards Plaintiffs' counsel their attorneys' fees subject to a twenty-five percent deduction.

| Attorney | Hours Requested | Hours Deducted | Subtotal Hours |
|---|---|---|---|
| D. Eric Sowers | 339.9 | 3.7 | 336.2 |
| Ferne Wolf | 212.20 | 2.6 | 209.6 |
| M. Beth Fetterman | 37.5 | 18 | 19.5 |
| Rufus Tate | 102.7 | 53.9 | 48.8 |

---

trial preparation.

[20] The Court deducts 0.5 hours for travel for depositions on 10/8/09, 10/12/09, 10/16/09, 12/18/09 and for mediation on 11/12/09.

| Attorney | Subtotal Hours | Hours With 25% Reduction | Total Fees[21] |
|---|---|---|---|
| D. Eric Sowers | 336.2 | 252.15 | $113,467.50 |
| Ferne Wolf | 209.6 | 157.2 | $62,880.00 |
| M. Beth Fetterman | 19.5 | 14.625 | $2,851.88 |
| Rufus Tate | 48.8 | 36.6 | $9,516.00 |
| | | TOTAL FEE AWARD: | $188,715.38 |

**IT IS HEREBY ORDERED** that the Motion [Affidavit] of Eric T. Tolen as to Attorneys' Fees and Expenses (Doc. No. 122) is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** Plaintiffs' Motion for Award of Attorneys' Fees and Expenses (Doc. No. 123) is hereby **GRANTED**, in part, and **DENIED**, in part.

**IT IS HEREBY FURTHER ORDERED** that Plaintiffs are awarded $188,715.38 in Attorneys' Fees.

Dated this 19th day of May, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[21] The fee totals reflect the billing rates discussed in the Memorandum: Sowers-$450/hour; Wolf-$400/hour; Fetterman-$195/hour; and Tate-$260/hour.